IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| M.E.G., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-25-665-STE |
| ) | |
| FRANK BISIGNANO, ) | |
| Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

I.  **PROCEDURAL BACKGROUND**

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 17-26). On review, the Appeals Council

denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner for purposes of the instant appeal.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of January 1, 2022 through his date last insured of September 30, 2023. (TR. 19). At step two, the ALJ determined Plaintiff suffered from the following severe impairments: chronic pain syndrome; kidney disease; Raynaud's disease; neuropathy; arthritis; cervical and lumbar degenerative disc disease, and status/post left inguinal hernia repair. (TR. 19). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 21).

At step four, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to:

> [L]ift and carry up to 10 pounds frequently and up to 20 pounds occasionally. He could stand and/or walk in combination up to 4 hours in an 8-hour workday. He could sit for up to 6 hours in an 8-hour workday. He could occasionally climb ramps and stairs. He could never climb ladders, ropes, or scaffolds. He could occasionally stoop, kneel, crouch, and crawl. He could frequently handle and finger bilaterally. He needed to avoid occupations that require looking over the shoulder. He needed to avoid extreme cold weather, excessive vibrations, and unprotected heights.

(TR. 21).

At step four, the ALJ determined that Plaintiff was unable to perform his past relevant work. (TR. 24). Therefore, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 55). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles that Plaintiff could perform. (TR. 55). The ALJ then adopted the VE's testimony and concluded, at step five, that Plaintiff was not disabled based on his ability to perform the identified jobs. (TR. 25-26).

### III.   ISSUE PRESENTED

On appeal, Plaintiff alleges the ALJ erred in: (1) failing to consider all the relevant evidence in determining Plaintiff's RFC and (2) analyzing Plaintiff's subjective allegations. (ECF Nos. 7:4-15, 12:2-11).

### IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.   PLAINTIFF'S FIRST PROPOSITION

Plaintiff's first point of error is set forth as: "The ALJ failed to account for all the relevant evidence pursuant to SSR 96-8p resulting in harmful error." (ECF No. 7:4). Within this allegation of error, Plaintiff argues, in part, that the ALJ erred in her consideration of the evidence as related to Plaintiff's ability to walk and/or stand. Specifically, Plaintiff argues: (1) the ALJ improperly evaluated prior administrative findings from Dr. James Metcalf and (2) the ALJ failed to consider certain evidence from consultative examiner, Megan Ewing, APRN-CNP, which he believes is significantly probative on his ability to walk and/or stand. The Court rejects the first argument, but finds that the second argument has merit and constitutes reversible error.

### A.   The ALJ's Evaluation of Prior Administrative Findings from Dr. Metcalf

The Court begins its analysis of Plaintiff's argument by noting that Plaintiff's counsel has presented her argument in a rambling and haphazard manner, and the Court will do its very best to decipher it. Plaintiff first takes issue with the ALJ's reliance on Dr. Metcalf's opinion in the ALJ's RFC determination. (ECF No. 7:5). Dr. Metcalf issued a prior administrative finding that Plaintiff was capable of "light" work,[1] which "requires the

---

[1] (TR. 87).

ability to stand and/or walk for up to six hours a day." *Gutierrez v. Barnhart*, 109 F. App'x 321, 327, 2004 WL 2095612, at *5 (10th Cir. 2004). Plaintiff correctly notes that the ALJ found Dr. Metcalf's prior administrative finding supported the RFC, and that his opinion had been based on Plaintiff's complaints of pain and full range of motion, which Dr. Metcalf had deemed "generally consistent with the record." (TR. 24). Plaintiff seems to take issue with Dr. Metcalf's finding, citing other examples in the record which Plaintiff apparently believes contradicts this finding. (ECF No. 7:5). But the ALJ did not end her analysis solely relying on Dr. Metcalf's opinion as consistent with the record. The RFC determination alone, is evidence of that fact, as it allows only for four hours of standing and walking instead of six. *See* TR. 21. Instead, the ALJ stated:

> Although [Dr. Metcalf's] finding was generally consistent with the record, I considered the claimant's complaints of pain and spasms in further reducing his standing and walking. The prior administrative medical finding was not consistent with the same.

(TR. 24). In sum, Plaintiff argues that the ALJ failed to consider evidence which would have contradicted the ALJ's reliance on Dr. Metcalf's opinion regarding Plaintiff's ability to walk and/or stand. But the ALJ did not solely rely on Dr. Metcalf's opinion, as is evidenced by the RFC itself and the ALJ's accompanying explanation. The Court rejects this argument.

### B.  The ALJ's Evaluation of Evidence from Ms. Ewing

Next, Plaintiff challenges the ALJ's failure to consider certain evidence in formulating the RFC, which he believes is significantly probative on his ability to walk

and/or stand, as set forth by consultative examiner, Ms. Ewing, APRN-CNP. The Court agrees.[2]

It is well-established Tenth Circuit law that "in addition to discussing the evidence supporting [her] decision, the ALJ also must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996). Indeed, the Tenth Circuit has held that failure to explain the omission of limitations found in medical opinions is legal error requiring reversal. *Parker v. Comm'r*, 922 F.3d 1169, 1172–73 (10th Cir. 2019); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (finding that an ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability). Here, the ALJ did not explain why she rejected significantly probative and uncontroverted evidence in the record related to Plaintiff's ability to walk and/or stand. This constitutes reversible error.

---

[2] Plaintiff begins this argument by stating: "While assessing Claimant's lumbar spine as a severe impairment, the ALJ's summary discusses little of his lower back pain and limitations that even the Agency examiner noted." (ECF No. 7:5-6). Plaintiff's reference to the ALJ's assessment of Plaintiff's lumbar spine as "severe" is a step two finding. *See* 20 CFR § 404.1520(c); TR. 19. At the outset, Plaintiff appears to be challenging the ALJ's step two finding, arguing that the ALJ failed to consider certain evidence when evaluating the severity of Plaintiff's impairments. But the Tenth Circuit Court of Appeals has explained that any error committed in that consideration is rendered "harmless when the ALJ reache[s] the proper conclusion that [the claimant cannot] be denied benefits conclusively at step two and proceed[s] to the next step of the evaluation sequence," as she did here. *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008). However, a further reading of Plaintiff's argument reveals that he is *actually* challenging the ALJ's failure to consider certain evidence in formulating the RFC, which he believes is significantly probative on his ability to walk and/or stand, as set forth by consultative examiner, Ms. Ewing.

According to Plaintiff, the ALJ failed to consider Ms. Ewing's findings that Plaintiff suffered:

- pain in his bilateral feet;
- tenderness and spasms upon palpation in the mid thoracic region/paraspinal muscles;
- moderate to severe discomfort with flexion, extension, rotation, side-bending of the thoracic and lumbar spine;
- pain with external hip rotation bilaterally;
- an inability to perform straight leg testing due to pain; and
- an inability to heel walk or toe walk due to instability.

(ECF No. 7:6). Plaintiff is correct, as Ms. Ewing indeed made all the forgoing findings, *see* TR. 402-406, but the ALJ failed to mention them when discussing her report. In summarizing Ms. Ewing's report, the ALJ stated:

> During his late 2022 consultative examination, the claimant displayed moderate discomfort with flexion, extension, rotation, and side-bending of the cervical spine. His range of motion was full. His gait was antalgic, but steady. The claimant reported that his hands locked at times. His bilateral hand strength was 4/5. He had no crepitus or swelling (D4F/5-6). I have provided bilateral handling and fingering limitations to address his complaints. The claimant can frequently handle and finger. The limit to lifting and carrying 10 pounds frequently and 20 occasionally also addresses the claimant's hand complaints. His strength and ability to make a fist support these limitations (D4F/5). The claimant testified that he could still use his fingers during the relevant period, supporting the residual functional capacity's manipulative provisions.

(TR. 21-22).

The Court finds that the ALJ failed to discuss significantly probative evidence found by Ms. Ewing regarding her examination of Plaintiff which was directly relevant to his

ability to walk and/or stand. The ALJ characterized Plaintiff's gait as summarized by Ms. Ewing as "antalgic, but steady"—this being the only reference to Plaintiff's ability to walk and/or stand. (TR. 22). The ALJ seems to believe that the fact that Plaintiff's gait was "steady" somehow "normalizes" Plaintiff's gait, but the definition of an "antalgic gait" is when an individual walks with a limp due to pain, which would obviously affect Plaintiff's ability to walk and/or stand.[3] Additionally, and as discussed, the ALJ failed to even mention Ms. Ewing's findings that Plaintiff suffered bilateral foot pain, an inability to perform straight leg testing due to pain, and an inability to heel walk or toe walk due to instability. The Court finds that the ALJ's failure to consider such significantly probative evidence is reversible error. *See Carpenter v. Astrue*, 537 F.3d at 1267 (finding reversible error based on ALJ's failure to discuss significantly probative evidence from a physician's report which limited her ability to walk).

## VI.    PLAINTIFF'S REMAINING ALLEGATION OF ERROR

The Court declines to consider Plaintiff's remaining allegations of error, as they will likely be affected "by the ALJ's treatment of [the] case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties.

---

[3]    *See* https://www.webmd.com/pain-management/what-is-antalgic-gait (last visited Jan. 7, 2026).

Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on January 26, 2026.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE